**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JULIE FERREIRA,<br><br>Plaintiff,<br><br>v.<br><br>WOODBRIDGE TOWNSHIP; *et al.,*<br><br>Defendants. | Civil Action No.: 2:25-cv-10018 (ES) (AME)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Pending before the Court is a motion to dismiss ("Motion") under Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Woodbridge Township and several municipal officials and judicial officers: Norma Murgado, Chief Municipal Prosecutor ("Murgado"); Robert Carroll, Municipal Prosecutor ("Carroll"); James P. Nolan, Jr., Law Director ("Nolan"); the Honorable David Stahl, Municipal Judge ("Judge Stahl"); and the Honorable Kevin H. Morse, Presiding Municipal Judge ("Judge Morse" and together with Judge Stahl, "Judge Defendants"). (D.E. Nos. 8 ("Motion") & 8-1 ("Mov. Br.")).[1]

The Court has carefully considered the parties' submissions in connection with the motion, as well as the balance of the record, and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons stated herein, the Court GRANTS Defendants' Motion and dismisses Plaintiff's Complaint *without prejudice*.

---

[1]     All Defendants hereafter are referred to together as "Defendants."

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On June 10, 2025, Plaintiff Julie Ferreira ("Plaintiff") brought this civil rights action *pro se* against Defendants pursuant to 42 U.S.C. § 1983. (D.E. No. 1 ("Complaint" or "Compl.")). According to the Complaint, on or about April 11, 2022, Plaintiff was served with two criminal complaints by the Woodbridge Township Municipal Court charging her with harassment in violation of N.J. Stat. Ann. § 2C:33-4(c). (Compl. at 4, ¶ 1 (ECF Pagination)). Plaintiff alleges that the complaints were based on conduct for which a prior complaint had been dismissed in 2021 for lack of probable cause. (*Id.*). Plaintiff further alleges that, from April 11, 2022 to June 21, 2023, she "was required to appear at Woodbridge Municipal Court approximately 16 times" in connection with those charges. (*Id.* ¶ 2). During that period, Plaintiff contends that she repeatedly informed municipal officials, prosecutors, and judges that the complaints lacked probable cause and that exculpatory evidence existed, but the charges were not dismissed. (*Id.* ¶ 3). Plaintiff also alleges that municipal prosecutors—Defendants Murgado and Carroll—either failed to appear or meaningfully participate in the court proceedings, and that the municipal judges—Defendants Judge Stahl and Judge Morse—permitted the prosecutions to continue for years despite the alleged absence of probable cause. (*Id.* ¶¶ 2–4). According to the Complaint, the Judge Defendants "oftentimes appeared to veer into acting as municipal prosecutors in the absence of an actual municipal prosecutor." (*Id.* ¶ 4).

Plaintiff further alleges that Defendants pursued the criminal charges in retaliation for her prior use of Township services and conditioned the dismissal of the charges against her on her agreement to withdraw unrelated complaints she had filed against another individual. (*Id.* ¶ 5). According to the Complaint, the harassment charges remained pending until June 21, 2023, when they were dismissed by the municipal court. (*Id.* ¶ 7).

2

Based on these allegations, on June 10, 2025, Plaintiff initiated this lawsuit against the Defendants, asserting claims under 42 U.S.C. § 1983 for malicious prosecution, conspiracy to violate civil rights, First Amendment retaliation, and municipal liability, as well as claims under the New Jersey Civil Rights Act and New Jersey common law. (*See generally* Compl.).

Following Plaintiff's commencement of this action, the Defendants filed the present Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Motion & Mov. Br.). Plaintiff filed a brief opposing the Motion, (D.E. No. 12 ("Opp. Br.")), and the Defendants filed a reply, (D.E. No. 13 ("Reply Br.")).

The Motion is fully briefed and now ripe for adjudication.

## II.    LEGAL STANDARD

Under Rule 12(b)(6), the Court may dismiss a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a Rule 12(b)(6) motion, the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). However, "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The burden is on the moving party to show that the plaintiff has not stated a facially plausible cause of action. *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

3

In assessing *pro se* complaints, courts are obligated to "liberally construe" the litigant's pleading. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) (citation omitted). Nevertheless, *pro se* litigants, like all other litigants, must allege sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022) ("*[P]ro se* litigants . . . must still allege sufficient facts to support a claim." (internal quotation marks and citation omitted)); *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).

## III.    DISCUSSION

As a threshold matter, the Court notes that Defendants advance numerous grounds for dismissal, including prosecutorial immunity, judicial immunity, lack of personal involvement, improper group pleading, and failure to state a claim. (*See generally* Mov. Br.). The Court need not address every argument raised, nor consider the arguments in the order presented by Defendants. *See, e.g.*, *Thompson v. Cobham*, No. 12-1041, 2012 WL 2374724, at *1 (D.N.J. June 22, 2012) ("[T]he Court need not address every reason to dismiss the [ ] Complaint[.]"). Instead, the Court first considers whether Plaintiff has plausibly alleged the constitutional violations underlying her claims. Because the Court concludes that she has not, it addresses Defendants' remaining arguments only insofar as they provide independent grounds for dismissal and declines to reach the parties' dispute regarding judicial immunity.

Defendants move to dismiss the Complaint based on failure to state a claim upon which relief can be granted in accordance with Rule 12(b)(6). (Mov. Br. at 1). Plaintiff's federal claims arise under 42 U.S.C. § 1983 and are premised on the theory that Defendants violated her constitutional rights in connection with the prosecution of harassment charges in Woodbridge Municipal Court. Section 1983 provides in relevant part:

4

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. To state a claim for relief under Section 1983, a plaintiff must allege: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federally secured right." *Mitchell v. Cnty. of Bergen*, No. 23-596, 2024 WL 1526121, at *2 (D.N.J. Apr. 9, 2024) (quoting *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993)). Additionally, a defendant in a Section 1983 civil rights action must have personal involvement in the alleged constitutional violation. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). Liability thereby requires a "showing of direct responsibility" by the named defendant and eschews any "theory of liability" in which defendants played "no affirmative part in depriving any[one] . . . of any constitutional rights." *Rizzo* v. *Goode*, 423 U.S. 362, 376–77 (1976). Accordingly, a plaintiff must plead that each defendant, through his or her own individual actions, violated the Constitution. *See Iqbal*, 556 U.S. at 676.

### A.      Plaintiff Fails to Plead an Underlying Constitutional Violation

Because each of Plaintiff's federal claims depends on a plausible allegation that she was deprived of a federally secured right, the Court begins with whether the Complaint states a plausible underlying constitutional violation as to any Defendant. The parties have devoted significant arguments to the question of judicial immunity. (*See, e.g.,* Mov. Br. at 15–17; Opp. Br. at 10–18). The Court, however, need not reach that issue, as dismissal is independently warranted

5

under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See Twombly*, 550 U.S. at 555. The Court addresses each federal cause of action in turn.[2]

### i. Plaintiff's Section 1983 Malicious Prosecution Claim

A Section 1983 malicious prosecution claim rooted in the Fourth Amendment requires a plaintiff to establish that "(1) the defendant[s] initiate[d] a criminal proceeding; (2) which end[ed] in plaintiff's favor; (3) which was initiated without probable cause; and (4) the defendant[s] act[ed] maliciously or for a purpose other than bringing the [criminal] defendant to justice." *Luthe v. City of Cape May*, 49 F. Supp. 2d 380, 392 (D.N.J. 1999) (quoting *Akins v. Deptford Twp.*, No. 92-610 1993 WL 147343, at *5 (D.N.J. May 3, 1993)). In addition to these elements, the plaintiff must demonstrate that she suffered a deprivation of liberty consistent with the concept of a Fourth Amendment seizure. *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998) ("Because under the common law, the tort of malicious prosecution concerns 'perversion of proper legal procedures,' [plaintiff] must show that [s]he suffered a seizure as a consequence of a legal proceeding.") (quoting *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116–17 (2d Cir. 1995)); *see also DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citing *Estate of Smith v. Marasco,* 318 F.3d 497, 521 (3d Cir. 2003)).

Here, Plaintiff fails to plausibly allege such a deprivation of liberty. Plaintiff alleges only that she "suffered a deprivation of liberty consistent with the concept of seizure as a consequence

---

[2] The Court notes that many of Plaintiff's allegations suffer from impermissible group pleading. Where a complaint names multiple defendants, a plaintiff may not rely on generalized allegations against all defendants without specifically pleading each defendant's personal involvement in the alleged misconduct. *See McCoy v. Scott*, No. 23-21272, 2024 WL 3580662, at *3 (D.N.J. July 29, 2024) (first citing *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015), and then citing *Falat v. Cnty. of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013)); *see also Cheng v. Byrd*, No. 23-5349, 2024 WL 3873945, at *2 (D.N.J. Aug. 20, 2024). Although the Court has liberally construed the Complaint in light of Plaintiff's *pro se* status, many of Plaintiff's allegations refer collectively to "Defendants" without identifying which defendant engaged in the challenged conduct. (*See generally* Compl.). To the extent Plaintiff elects to file an amended complaint, she must plead the personal involvement of each defendant with greater specificity.

of the legal proceeding[,]" (Compl. at 7, ¶ 6 (ECF Pagination)), and that she "was deprived of her Fourth Amendment constitutional rights and will incur additional special damages in the future in an amount which cannot yet be determined." (Compl. at 8, ¶ 7 (ECF Pagination)). These allegations merely recite the elements of a Section 1983 malicious prosecution claim and are unsupported by factual allegations demonstrating a Fourth Amendment seizure.

Indeed, the Complaint is devoid of any factual allegations establishing that Plaintiff was arrested, detained, incarcerated, required to post bail, subjected to travel restrictions, or otherwise deprived of her physical liberty. (*See generally* Compl.). In *DiBella*, the United States Court of Appeals for the Third Circuit held that no Fourth Amendment seizure occurred where the plaintiffs were issued summonses, were never arrested, never posted bail, remained free to travel, and were required only to attend municipal-court proceedings. 407 F.3d at 603 ("Their liberty was restricted only during the Municipal Court trials and the Fourth Amendment does not extend beyond the period of pretrial restrictions"). The Third Circuit further explained that "[a]ttending one's trial is not a government 'seizure' in a 42 U.S.C. § 1983 malicious prosecution action for violation of the Fourth Amendment." *Id.*

The same reasoning applies here. Plaintiff alleges that she was required to appear in municipal court on approximately sixteen occasions between April 2022 and June 2023. (Compl. at 4, ¶ 2 (ECF Pagination)). However, she does not allege that she was subjected to any restraint on her liberty beyond the obligation to attend those proceedings. *See DiBella*, 407 F.3d at 603; *see also Walker v. Heller*, No. 15-580, 2017 WL 4786557, at *8 (D.N.J. Oct. 24, 2017) ("In order to sustain a malicious prosecution claim, Plaintiff must put forward evidence that, 'between arrest and pretrial detention,' she was subject to a 'seizure *significant enough* to constitute a Fourth Amendment violation.'") (quoting *DiBella*, 407 F.3d at 603 (internal quotation marks omitted)).

7

Such allegations are insufficient, as a matter of law, to establish the seizure element of a Fourth Amendment malicious prosecution claim. *See Rainas v. City of Wildwood*, No. 09-2699, 2010 WL 11693184, at *6 (D.N.J. Jan. 5, 2010) (dismissing plaintiff's Section 1983 malicious prosecution claims "[b]ecause Plaintiff has failed to show that the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding").

Accordingly, because Plaintiff has failed to plausibly allege a deprivation of liberty consistent with a Fourth Amendment seizure, her Section 1983 malicious prosecution claim fails as a matter of law as to all Defendants.

### ii.   Plaintiff's Section 1983 Conspiracy Claim

In Count Two of the Complaint, Plaintiff asserts a claim for conspiracy to violate civil rights pursuant to 42 U.S.C. § 1983. (Compl. at 8, Count Two (ECF Pagination)). To state a conspiracy claim under Section 1983, a plaintiff must allege that "persons acting under color of state law 'reached an understanding' to deprive [plaintiff] of [her] constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293–94 (3d Cir. 2018) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150–52 (1970)).

Here, the Court finds Plaintiff's conspiracy allegations conclusory. Plaintiff alleges that Defendants "conspired to deprive Plaintiff of her Fourth Amendment right to be secure in her persons against unreasonable seizure by maliciously prosecuting her without probable cause." (Compl. at 8, Count Two, ¶ 2 (ECF Pagination)). Plaintiff further alleges that "in furtherance of this agreement," Defendants "ordered the prosecutions of Plaintiff without probable cause." (*Id.* ¶ 3). These allegations merely recite the elements of a conspiracy claim without providing any factual content from which the Court could reasonably infer the existence of an agreement or meeting of the minds among Defendants.

Indeed, the Complaint contains no factual allegations regarding communications, meetings, or coordinated conduct, or any other circumstances suggesting that Defendants reached an understanding to violate Plaintiff's constitutional rights. *See OM 309-311 6th St., LLC v. City of Union City*, No. 21-12051, 2022 WL 855769, at *12 (D.N.J. Mar. 23, 2022) (holding that the plaintiff does not plausibly plead a conspiracy by alleging only a single meeting or communication between defendants). Rather, Plaintiff relies on generalized assertions that Defendants acted in concert. (*See generally* Compl.). Such allegations are insufficient under Rule 12(b)(6). *See Twombly*, 550 U.S. at 555 (holding that "labels and conclusions" and a "formulaic recitation of the elements of a cause of action" do not suffice to state a plausible claim for relief). Accordingly, Plaintiff has failed to plausibly allege a conspiracy under Section 1983, and Count Two must be dismissed as to all Defendants.

### iii.    Plaintiff's First Amendment Retaliation Claim

Plaintiff's First Amendment retaliation claim likewise fails. To state a First Amendment retaliation claim, a plaintiff must allege: (1) that she engaged in constitutionally protected conduct; (2) that the defendant took retaliatory action sufficient to deter a person of ordinary firmness from exercising her constitutional rights; and (3) that a causal link exists between the constitutionally protected conduct and the retaliatory action. *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003)); *see also Mack v. Warden Loretto FCI*, 839 F.3d 286, 297 (3d Cir. 2016) (applying this test to a claim of retaliation for the exercise of the right to petition).

Here, Plaintiff alleges that "Defendants abused their authority to harass and retaliate against Plaintiff," and "had Plaintiff maliciously prosecuted for harassment in retaliation for Plaintiff exercising her common law right to utilize township department services." (Compl. at 10, Count

9

Three, ¶¶ 3–4 (ECF Pagination)).  However, the Complaint does not plausibly allege that Plaintiff engaged in conduct protected by the First Amendment.  Although the First Amendment protects, among other things, the right to petition the government for a redress of grievances, *see Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017) (noting that First Amendment rights include both the right to free speech and the right to petition the government for redress of grievances), Plaintiff does not allege facts demonstrating that the conduct identified by Plaintiff—her purported "common law right to utilize township department services"—constituted protected speech, expressive activity, or petitioning activity within the meaning of the First Amendment.[3]  (*See generally* Compl.).

Moreover, even assuming Plaintiff engaged in protected activity, the Complaint fails to plausibly allege a causal connection between that activity and the initiation of criminal charges against her.  *See Thomas*, 463 F.3d at 296; *see also Hartman v. Moore*, 547 U.S. 250, 260 (2006) (holding the required link is "but-for" causation (citation omitted)).  And "any . . . plaintiff charging official retaliatory action . . . must prove the elements of retaliatory animus as the cause of injury, and the defendant will have the . . . opportunity to respond to a prima facie case by showing that the action would have been taken anyway, independently of any retaliatory animus."  *Hartman*, 547 U.S. at 260–61.  Here, Plaintiff offers only the conclusory assertion that Defendants acted in retaliation for her use of township services. (Compl. at 10, Count Three, ¶¶ 3–4 (ECF Pagination)).  Plaintiff alleges no facts concerning when the purported protected activity occurred, which Defendant allegedly retaliated against her, or how any retaliatory motive may reasonably be

---

[3]    To the extent Plaintiff characterizes the relevant conduct as her "common law right to utilize township department services," (Compl. at 10, Count Three, ¶¶ 3–4 (ECF Pagination)), the Complaint does not explain what specific conduct this phrase encompasses or allege facts showing that such conduct constituted protected speech or petitioning activity. *See Mack*, 839 F.3d at 297–98 (explaining that the Free Speech Clause and the Petition Clause protect personal expression and petitions directed to the government for redress of grievances).

inferred from the circumstances alleged.  (*See generally* Compl.).  Such "[t]hreadbare recitals of the elements of a cause of action" are insufficient to survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  Accordingly, Count Three is dismissed.

**B.      The Claims Against the Municipal Prosecutors Independently Fail**

As explained above, Plaintiff has failed to plead an underlying constitutional violation, and her claims against Defendants Murgado and Carroll therefore fail for the same reasons.  Those claims are, in any event, independently barred by absolute prosecutorial immunity.  Prosecutors enjoy absolute immunity from suit in their individual capacities for all actions and decisions taken in furtherance of their prosecutorial duties.  *See Imbler v. Pachtman*, 424 U.S. 409, 424–25 (1976) ("The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages."); *see also Roberts v. Lau*, 90 F.4th 618, 624 (3d Cir. 2024) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993) ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.").  Here, all of Plaintiff's allegations against Defendants Murgado and Carroll relate to their official prosecutorial positions and capacities.  Specifically, Plaintiff alleges that "Defendants Norma Murgado and Robert Car[r]oll (municipal prosecutors) either failed to appear or failed to meaningfully participate in the proceedings," and "failed to exercise their supervisory responsibility to dismiss complaints that plainly lacked probable cause."  (Compl. at 4, ¶ 2 (ECF Pagination)).  These allegations challenge decisions concerning the initiation, maintenance, and disposition of criminal proceedings—functions that are "intimately associated with the judicial

11

phase of the criminal process" and therefore protected by absolute prosecutorial immunity. *Imbler*, 424 U.S. at 430.

The fact that Plaintiff characterizes the alleged misconduct as a failure to act does not alter the analysis. Decisions concerning whether to pursue, continue, or dismiss criminal charges fall squarely within the scope of a prosecutor's advocacy function. *See Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992) ("Absolute immunity attaches to all actions" that a prosecutor "perform[s] in a 'quasi-judicial' role." (quoting *Imbler*, 424 U.S. at 430)); *see also Newsome v. City of Newark*, No. 13-06234, 2014 WL 4798783, at *3 (D.N.J. Sept. 25, 2014) ("[D]ecisions regarding how to proceed with a prosecution serve a prosecutorial, rather than administrative function and thus warrant absolute immunity.") (quoting *Imbler*, 424 U.S. at 431); *Zisa v. Haviland*, No. 17-5551, 2020 WL 1527862, at *3 (D.N.J. Mar. 31, 2020).

Accordingly, because the conduct challenged in the Complaint arises from actions undertaken by Defendants Murgado and Carroll in their roles as municipal prosecutors, they are entitled to absolute prosecutorial immunity from Plaintiff's claims for damages.

### C.     Claims Against Nolan Are Dismissed for Lack of Personal Involvement[4]

The claims against Nolan fail, too. The Complaint contains few factual allegations specifically concerning Nolan. The sole individualized allegation against him is that, after Plaintiff complained about the municipal-court proceedings, Nolan responded that he had reviewed the file and concluded that prosecutor Carroll had done "nothing improper or inappropriate." (Compl. at 4, ¶ 3 (ECF Pagination)). The remainder of the allegations against Nolan consist primarily of generalized assertions that lump him together with the other Defendants and allege, in conclusory

---

[4]     Because the Court concludes that Plaintiff has failed to allege Nolan's personal involvement in the conduct challenged in the Complaint, it need not address Defendants' alternative argument that Nolan is entitled to qualified immunity. (*See* Mov. Br. at 19–22).

fashion, that all Defendants ignored exculpatory evidence, permitted the prosecution to continue, or otherwise violated Plaintiff's rights. (*See generally* Compl.). Such allegations are insufficient under Rule 12(b)(6) to plausibly plead Nolan's personal involvement in the alleged constitutional violations. *See Rode*, 845 F.2d at 1207–08 ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.").

Accordingly, the Court concludes that Plaintiff has failed to state a plausible claim against Nolan, and the claims against him must be dismissed.

### D. Plaintiff Fails to State a Claim Against Woodbridge Township[5]

The Court next turns to Plaintiff's claims against Woodbridge Township. Plaintiff asserts a claim of municipal liability under Section 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), alleging that the Township enacted an unconstitutional policy and failed to adequately train its employees. (Compl. at 11–13, Count Four (ECF Pagination)). As an initial matter, this claim fails because, as explained above, Plaintiff fails to plead an underlying constitutional violation against the individual Defendants, and a municipality cannot be held liable under Section 1983 absent an underlying violation of constitutional rights by its employees. *See Monell*, 436 U.S. at 691("[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory"); *see also Terranova v. Borough of Hasbrouck Heights*, No. 19-12515, 2020 WL 526113, at *8 (D.N.J. Jan. 30, 2020) (dismissing plaintiff's *Monell* claims against a

---

[5] The Court construes Count IV of the Complaint as asserting a claim of municipal liability against Woodbridge Township. *See Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (holding that courts must liberally construe *pro se* pleadings and "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name."); *see also Higgins v. Beyer,* 293 F.3d 683, 688 (3d Cir. 2002).

school for failing to plead an underlying constitutional violation against the school's superintendent). In any event, and as discussed below, Plaintiff independently fails to plead facts sufficient to support either theory of municipal liability.

A Section 1983 claim against a municipality may proceed in two situations: (i) when an official policy or custom is the impetus for a constitutional violation ("policy or custom theory"); or (ii) when a plaintiff's injuries were caused by a municipality's failure or inadequacy, such as a failure to train, supervise, or discipline ("failure theory"). *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019) (citing *Monell*, 436 U.S. at 694)).

The Court first considers whether the municipality at issue possessed a policy or custom which served as the impetus for a constitutional violation. "A policy need not be passed by a legislative body, or even be in writing, to constitute an official policy for the purposes of § 1983. A pertinent decision by an official with decision-making authority on the subject constitutes official policy." *Porter v. City of Philadelphia*, 975 F.3d 374, 383 (3d Cir. 2020) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

Here, Plaintiff's municipal-liability claim fails under the policy or custom theory. Plaintiff alleges in a conclusory fashion that Defendants "intentionally, knowingly, recklessly and/or with deliberate indifference enacted an unconstitutional policy by retaliating against Plaintiff for exercising her common law right to utilize township department services." (Compl. at 11, Count Four, ¶ 3 (ECF Pagination)). But Plaintiff identifies no specific policy, ordinance, regulation, or

14

official decision adopted by the Township that directed or authorized the allegedly unconstitutional conduct. (*Id.*). Nor does Plaintiff allege facts from which the Court could infer the existence of a "custom"—*i.e.*, a course of conduct so "well-settled and permanent as virtually to constitute law." *Bielevicz*, 915 F.2d at 850. There is no allegation of any prior instance of similar misconduct by the Township or its employees, nor any allegation that the Township was on actual or constructive notice of a pattern of constitutional violations. (*See generally* Compl.).

Second, a municipality's failure to train employees may serve as a basis for Section 1983 liability only "where the failure to train amounts to 'deliberate indifference' to the constitutional rights of persons with whom the [employees] may come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Plaintiff must plead facts demonstrating that, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. Here, Plaintiff pleads no facts whatsoever to support a failure-to-train claim. There are no factual allegations identifying what training was inadequate, what training should have been provided, or how any training deficiency caused Plaintiff's alleged constitutional injuries. (*See generally* Compl.). Accordingly, the claims against Woodbridge Township are dismissed.

### E. Plaintiff's NJCRA and State Law Claims

Having dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over any remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the

parties provide an affirmative justification for doing so.").  No such considerations counsel in favor of retaining jurisdiction here.  Accordingly, to the extent any state-law claims survive the analysis above, they are dismissed *without prejudice*.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**.  Plaintiff's federal claims under 42 U.S.C. § 1983 are **DISMISSED**, *without prejudice*, as to all Defendants. To the extent Plaintiff asserts state-law claims, the Court declines to exercise supplemental jurisdiction, and those claims are dismissed *without prejudice* pursuant to 28 U.S.C. § 1367(c)(3). Plaintiff may file an amended complaint within thirty (30) days of the date of this Opinion curing the deficiencies identified herein.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (holding that leave to amend should generally be granted to *pro se* litigants unless amendment would be futile); *see also Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).  An appropriate Order accompanies this Opinion.

**Date**: July 7, 2026

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**